Tangipahoa Parish Clerk of Court   20230001703
Filed May 25, 2023 12:34 PM        B
Marquita Dyson
Deputy Clerk of Court
E-File Received May 25, 2023 12:22 PM

## 21st JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA

### STATE OF LOUISIANA

NO. 2023-0001703                                              DIVISION: B

**MIRA HOSPITALITY, LLC and ARJUN HOSPITALITY, LLC,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**VERSUS**

**REPUBLIC SERVICES, INC and BFI WASTE SERVICES, LLC**

FILED _____          _____
                                        **DEPUTY CLERK OF COURT**

### CLASS ACTION PETITION

The Class Action Petition of Mira Hospitality, LLC and Arjun Hospitality, LLC, individually and on behalf of all others similarly situated in Louisiana, hereinafter sometimes referred to as Petitioners or Plaintiffs with respect represent that:

### I.  NATURE OF THE CASE

1.   Republic Services, Inc. (Republic") has engaged in a widespread and systematic practice of overcharging its customers through systematic, automated rate increases.

2.   Republic is one of the largest solid waste disposal companies in the United States, with some $950 million in annual revenue. Like many other small businesses across Louisiana, Plaintiffs paid Republic for waste disposal pursuant to a standard, preprinted contract. Notably, this contract is uniform among putative class members in all relevant aspects and typically contains a multi-year, auto-renewing term. The primary purpose of the form contract is to establish the rates a given customer will pay Republic for waste pickup.

3.   After signing customers to the form contract with the promise of fixed rates, Republic deliberately and repeatedly increases these rates without any contractual justification. The contracts specifically restrict Republic's ability to increase rates to pass through five specific costs it might incur: "(a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customers Waste Materials...or (e)

Certified True and
Correct Copy
CertID: 2023052500166

_Kallin Leto_
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

limitation, Republic has deliberately and repeatedly overcharged customers through automated "Yield Management Process" (or "YMP") increases. The YMP increases are imposed through an algorithm that does not account for any allowable cost increase. Further, Republic imposes separate rate increases for all allowable reasons other than CPI and disposal costs and the YMP increases far exceed any increases in CPI or disposal cost.[2] The YMP increases are imposed annually and often exceed 90% of the agreed-upon price over the course of a contractual term. If customers try to avoid paying them, Republic will sue; relying on the punitive attorney's fees provision in the form contract which allows it to recover the entirety of the attorney's fees and litigation costs it incurs in doing so.

4. Finally, this case presents a prototypical situation for class treatment. Republic's conduct—including all relevant practices, conduct, and documents—is uniform among all class members. The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter as the damages suffered by Plaintiffs occurred in this Parish.

6. This Court has personal jurisdiction over each Defendant because Defendants do business in this District, the claims asserted in this case arise or relate in part to conduct that originated and took place in this District, and Defendants could reasonably anticipate litigation in this District under traditional notions of fair play and substantial justice.

7. In addition to its conduct in Louisiana that gives rise to specific personal jurisdiction, Defendants have such continuous and systematic contacts with this state that they are subject to general personal jurisdiction.

8. As discussed below, Republic Services, Inc. exercises such dominion and control over its subsidiaries, including BFI Waste Services, LLC that venue is proper and jurisdiction appropriate over each of them in this District, including because the contacts of either may be imputed to the other.

9. Venue is proper in this Court as Plaintiffs each are located in this judicial district,

---

[2] In fact, Republic owns its landfills and does not have any increased "disposal costs," particularly on a per-customer basis.

2


Certified True and Correct Copy
CertID: 2023052500166

Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

and the conduct giving rise to Plaintiffs' claims occurred in this judicial district.

### III. PARTIES

10. Mira Hospitality, LLC is a Louisiana entity with its principal place of business in Hammond, Louisiana.

11. Arjun Hospitality, LLC is a Louisiana corporation with its principal place of business in Hammond, Louisiana.

12. Plaintiffs' experiences with Republic are typical of the classes in all relevant aspects. Plaintiffs each entered into a form contract with Republic.[3] Republic unilaterally and unlawfully implemented automated YMP rate increases that damaged Plaintiffs (in that Plaintiffs paid the rate increases) and which did not comply with the contractual terms in that they were neither charged to recover, and far exceeded, any pass-through cost allowed by the contract.

13. Republic Services, Inc. and BFI Waste Services, LLC are each Delaware entities with a principal address at 18500 North Allied Way, Phoenix, AZ 85054.

14. Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Republic Services Inc.'s subsidiaries, including BFI Waste Services, LLC, are mere alter egos of Republic Services, Inc. Republic Services, Inc. and BFI Waste Services, LLC share management structure and financial accounting and any legal distinction between these entities is a fiction designed to limit liability. As shown below, Republic Services, Inc. wholly owns BFI Waste Services, LLC, which is completely financially dependent upon Republic Services, Inc. and which carries none of its own capital. The subsidiaries do not pay dividends and Republic Services, Inc.—as the dominant shareholder—continually siphons funds from its subsidiaries by collecting revenue attributable to the activities ostensibly carried on by the subsidiaries to Republic Services, Inc. directly. Upon information and belief, BFI Waste Services, LLC is a shell without any employees or assets. The corporate formalities are unobserved. Republic Services, Inc. explicitly brands and represents itself and its subsidiaries as one company. As explained below, Republic Services, Inc. exercises complete control over every aspect of the business of the subsidiaries, down to day-to-day operations. The sole purpose of the subsidiary distinction is to attempt to shield Republic Services, Inc. from liability, although it is the entity in control of all relevant conduct and the entity which receives all payment from the unlawful price increases at issue. ,.

---

[3] Plaintiff Budget Inns of Pensacola entered into the contract through its registered d.b.a. The Palm Court Inn.


Certified True and Correct Copy
CertID: 2023052500166
Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date: 5/25/2023 12:50 PM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

15. Indeed, in public filings, records, and representations, Republic Services, Inc. confirms the high level of control of all the aspects of the business of its subsidiaries—in particular the rate increases at issue—including BFI Waste Systems, LLC.

16. Republic Services, Inc. claims 35,000 employees, facilities in 41 states, and 345 collection operations, including BFI Waste Systems, LLC.[4] Republic Services, Inc. touts its standardized practices "through the Republic Way: *One Way. Everywhere. Every day.* This approach of developing standardized processes with rigorous controls and tracking allows [Republic Services, Inc.] to leverage our scale and deliver durable operational excellence."[5] Republic Services, Inc. "maintain[s] 360-degree accountability" of its subsidiaries and has "maintained, in all material respects, effective internal control over [their] financial reporting."[6] Republic Services, Inc. mandates and controls nearly every aspect of its subsidiaries' business including property, vehicles, safety measures for operation, and equipment standards.[7] It has specific standards for recognizing its own revenue accountable to collection operations and does so "when control is transferred to the customer, generally at the time [Republic] provide[s] a service. Revenue is measured as the amount of consideration [Republic] expect[s] to receive in exchange for providing a service."[8]

17. The finances and property of Republic Services, Inc. and its subsidiaries are deeply intertwined to the extent that they are indistinguishable. It utilizes a single accounting system for all operations. It recognizes as liability taxes attributable to the states in which it operates.[9] Republic Services, Inc. is listed as the owner of properties used for operations. It uses this and other properties to provide waste disposal services. It pays taxes for its subsidiaries in the states in which they operate.

18. Republic Services, Inc. plays a large, indispensable role in administering contracts as well as increasing rates.[10] Republic Services, Inc.'s President, Jon Vander Ark "is responsible for overseeing the Company's operations, sales, marketing and business development."[11] Republic

---

[4] Republic 2020 10k at 1, 5 (available at https://investor.republicservices.com/static-files/d70c8229-495e-40fc-94bc-02b7f10c1fdb).
[5] *Id.* at 3 (emphasis in original).
[6] *Id.* at 3, 63.
[7] *Id.* at 27, 5, 4.
[8] *Id.* at 77.
[9] *Id* at 94.
[10] *Id.* at 2 ("We seek to obtain long-term contracts for collecting recyclable and solid waste material under residential collection contracts with municipalities, exclusive franchise agreements, and small-container and large-container contracts.").
[11] 2021 Proxy Statement at 48 (available at https://investor.republicservices.com/static-files/5a2c573a-c7a5-4a9f-b58d-fa5a92f98961).


Certified True and Correct Copy
CertID: 2023052500166
Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
5/25/2023 12:50 PM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

brands itself on its website, in its promotional materials, on its vehicles, and with signage on its properties as one entity. Republic Services, Inc. has completely centralized and standardized customer service for its subsidiaries, including "consolidat[ing] over 100 customer service locations into three Customer Resource Centers" and instituting standard customer service tools, including the tools by which customers can pay their bills directly to Republic Services, Inc.[12] It has also implemented standardized pricing practices, including the calculation and implementation of rate increases. Republic Services, Inc. mandates use of its standardized sales and pricing tools "nationwide."[13] It uses a "Priority Based Selling (PBS) technique" that enables it "to identify and segment customers' buying priorities, and attract customers that are willing to pay for enhanced offerings."[14] For pricing, it mandates the use of a pricing tool called "Capture," "a cloud-based pricing tool that creates a more professional sales experience, helps realize better pricing levels at the point of sale and provides enhanced controls over the price quoting process."[15] Republic Services, Inc. itself seeks "to secure price increases" at issue here. It specifically analyzes contractual "ability" to increase rates based upon the contractual provisions.[16] Republic Services, Inc. specifically tracks the amounts of its revenue attributable to rate increases.[17] It actively tracks the numbers of customers on standard form contracts with potentially-varying price increase provisions as a way to increase revenue.[18] In sum, Republic Services, Inc. tightly controls the pricing of services applicable to customers across the country.

19. Given the nature of the relationship and structure of the Defendants, and as each of the Defendants engaged in the same unlawful activity in concert because they operate as a single entity without any meaningful distinction, Plaintiffs will refer to them collectively as "Republic" except as otherwise noted herein. Where the term "Republic" is used, it should be understood that it is referencing this single entity and each Defendant specifically.

---

[12] *Id.* at 4; *see also* 2021 Investor Presentation at 11 (available at https://investor.republicservices.com/static-files/324da296-bf2f-49e2-8321-6aa7afd66085).
[13] Republic 2020 10k at 7.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 26 ("We seek to secure price increases necessary to offset increased costs, improve our operating margins and earn an appropriate return on our substantial investments in assets such as our landfills. . . . Contractual, general economic or market-specific conditions also may limit our ability to raise prices. For example, many of our contracts have price adjustment provisions that are tied to an index such as the consumer price index. Particularly in a weak U.S. economy, our costs may increase in excess of the increase, if any, in the consumer price index . . . . As a result, we may be unable to offset increases in costs, improve our operating margins and obtain adequate investment returns through price increases. Price increases also might cause us to lose volume to lower-cost competitors.")
[17] *Id.* at 36. ("Average yield is defined as revenue growth from the change in average price per unit of service, expressed as a percentage. Core price is defined as price increases to our customers and fees, excluding fuel recovery, net of price decreases to retain customers.").
[18] 2021 Investor Presentation at 17 (discussing "open market" versus "restricted pricing" models and "Converting CPI based contracts to a more favorable index or fixed rate of 3% or greater").

Certified True and Correct Copy
CertID: 2023052500166
Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date: 5/25/2023 12:50 PM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

## IV. FACTUAL ALLEGATIONS

20. Republic is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $950 million in annual revenue.

21. Plaintiffs require solid waste disposal services and, like thousands of others, entered into standardized agreements with Republic to provide these services. This agreement is a long-term contract that primarily establishes a set rate for disposal services and which contains standardized language that governs it. The agreement also provides how Republic may be able to increase rates to pass through specific cost increases it incurs during the pendency and renewal terms of that contact. And, like thousands of other small businesses, after locking customers into these long-term contracts, Republic systematically increased rates with no contractual justification.

22. Republic's systematic "Yield Management Process" rate increases do not—in intent or effect—adjust for increases in the discrete costs identified in the uniform contractual provision that allows for them. Rather, Republic carries out a deliberate scheme to repeatedly increase rates without contractual justification by amounts that far exceed any cost increases that purportedly justify them. It does so through the application of a hidden, automated algorithm that does not attempt to correlate the YMP increases to increased costs; but that was rather intended to glean tens of millions of dollars of unearned profit from its customers. This conduct breaches the form contract and, alternatively, has resulted in Republic's unjust enrichment.

### A. The Standardized, Uniform Language At Issue.

23. Republic uses standardized "customer service agreements" to contract with small business customers regardless of location. Each time Republic seeks to secure a customer for its services, it presents an effectively identical form contract. Every putative class member entered into such this identical form contract. All relevant terms are pre-printed by Republic, including the uniform "Rate Adjustments" provision that governs the rate increases at issue in this litigation. Several categories of customer-specific information—including the billing and service addresses, names and contact information, rates (in dollar amounts which are set by Republic Services, Inc.), and other information needed for Republic to input the new customer into its information systems—is typed or written in for each specific customer. This contract must be completed before Republic will serve a new customer with dumpster solid waste disposal service.

24. The entire purpose of the form contract is to provide set rates for waste disposal services. But, as it is a long-term contract, it also allows for Republic to pass-through specific


Certified True and Correct Copy
CertID: 2023052500166


Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

outside costs it may incur, so long as it does so in accordance with the contractual requirements. The Rate Adjustments provision specifies how and when Republic may do so. It provides that Republic:

> may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in (a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customers Waste Materials…or (e) Company's costs due to changes in Applicable Laws.[19]

25. Thus, under the express terms of this provision, Republic may implement rate increases to pass-through "increases" in specific identified areas of discrete, external costs. As discussed below, the algorithmic YMP rate increases at issue in this case do not—in intent or effect—pass-through any such costs and result in Republic reaping millions in unearned profit.

26. Aside from establishing the fixed rate for service and the limited manner in which Republic may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a long term of at least three years, (b) integrate the contract, and (c) allow Republic punitive remedies including suspension, the payment of fees, and the payment of future amounts—up to six months—that Republic maintains are due under the contract in the event a customer fails to pay any amount or wishes to terminate.

**B. Republic's Unlawful, Unilateral Rate Increase Practice.**

27. Republic violates the form contract by systematically increasing rates in violation of the Rates Adjustment provision.

28. Each year, for any given customer, Republic increases the base service rate it charges by an amount that is intended to increase its profits without regard passing-through costs. It does so through an internal "Yield Management Process." The YMP is run at the highest corporate levels and relies upon an algorithm which Republic does not disclose to any customer. The YMP algorithm is designed to ensure that Republic meets its annual profit goals by increasing prices to small business customers. Republic refers to such customers as "unrestricted"; reflecting Republic's belief that—despite the fact there is a written contract—Republic has no limitations in what it can charge them. Indeed, the only constraining factor Republic considers in determining

---

[19] This contractual language was changed at one point to specify "the Consumer Price Index for All Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average…." This change is non-substantive and, regardless, named Plaintiffs entered into both versions. The allegations and proposed classes herein include all such contracts, and those involving substantively similar language.

Certified True and Correct Copy
CertID: 2023052500166
Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
5/25/2023 12:50 PM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

by amounts which actually reflect CPI. Republic knows that its small business customers are not able to determine that it is unlawfully breaching the form contract and, if they challenge the rate increases, Republic sues them to enforce, seeking vast amounts in attorney's fees and litigation costs.

33. The YMP automated rate increases violate the form contractual language that governs them and is present in every contact at issue, because in neither intent nor effect do they pass through any allowable increased cost, specifically CPI (and increased disposal costs, to the extent any exist). They are simply mechanisms by which Republic increases its profits as. There is no legal justification for Republic's practice of unilateral, systematic rate increases. Republic knows when it presents contracts for fixed rates, that it will inflate these rates precipitously and continually. Republic's practices breach the form contractual language it entered into with Plaintiffs and other small businesses across Louisiana and (alternatively) has resulted in Republic being unjustly enriched at its customers' expense. As a direct result of its unlawful rate increase conduct, Republic has wrongfully taken millions of dollars from putative class members over the statutory period.

**D. Neither Plaintiffs, Nor Any Putative Class Member, Had Full Knowledge Of the Facts Relating to the YMP Rate Increases.**

34. No putative class member, including Plaintiffs, had full knowledge of the facts pertaining to the rate increases such that would allow them to realize or act on their legal claims. Further, no putative class member, including Plaintiffs, did or could have consented to the rate increases.

35. Republic ensures that no customer—including Plaintiffs—can discover the true nature and illegality of the rate increases. Republic does not disclose the methodology of the increases, what any increase is purportedly intended to recover or pass-through, or why any increase is being imposed. Further, Republic represents—including by failing to seek consent for any increases—that these are mandatory cost-based increases and not increases to which customers must consent. Republic does not seek consent before it unilaterally imposes the YMP price increases and no Plaintiff or putative class member has provided "consent" in any form. Indeed, aside from deceptive conduct and resulting the lack of knowledge that pervades the price increases, payment alone is only evidence of continued compliance with the contract by Plaintiffs and putative class members, not "consent" to unlawful price increases.

36. Plaintiffs could not have discovered the basis of their claims without either candor

9


Certified True and Correct Copy
CertID: 2023052500166

Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
l5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

the amount of YMP price increases is customer retention and the likelihood that its anticompetitive behavior might be discovered.

29. Notably, the YMP does not attempt to calculate or pass-through any of the discrete external costs listed in the Rate Adjustments provision. Indeed, Republic implements *other* price increases for changes in "transportation costs due to a change in location of Customer or the disposal facility used by Company," "the average weight per cubic yard of Customers Waste Materials", and "changes in Applicable Laws." These other price increases are not at issue here. The additional YMP price increases purportedly are to recover increases in CPI (and potentially increases in disposal costs). But CPI and increased disposal costs are not factors in the YMP. In fact, Republic has no increases in disposal costs on a per-customer basis as it owns the landfills it uses for disposal. Even were one to calculate increases in CPI and such costs—although Republic does not do so—the YMP increases Republic imposes far outstrip any such cost increases it might incur.

30. The amount of the YMP rate increases varies, but are significant, and can result in customers paying more than 90% more than agreed by the end of an agreement term. Once the YMP rate increase is determined for any given small business customer, it is ultimately implemented through an automated process using Republic's sophisticated customer management system. This system implements and charges such price increases. Payments are made automatically to Republic, either through its online portal or through the lockbox system it controls.

31. Notably, Republic does not disclose to any putative class member the purported intent or calculation of the YMP rate increases. It simply imposes them, unilaterally, on invoices and charges the stored payment method. It does not disclose whether the YMP rate increases are purportedly for which, or any, of the allowable Rate Increase reasons and imposes other rate increases (again, not at issue here) in the same manner, such that it is impossible for any customer to determine how or why their rates are being increased.

32. The YMP price increases are discriminatory against small businesses. While Republic believes that it is "unrestricted" in its ability to raise rates for small business customers, it treats larger customers far differently. Indeed, the YMP price increases are only imposed on small business customers that form the "Commercial" and "Industrial" lines of business for Republic, and national accounts, brokers and other larger customers only have their rates increased

8


Certified True and Correct Copy
CertID: 2023052500166

Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

from Republic or access to Republic's financial information and methodology that it deliberately does not make public. Republic made these representations and omissions every time it implemented an increase. Plaintiffs reasonably relied on these representations and omissions as evidenced by the payment of the fees. Without such information, no customer could—and Plaintiffs did not—determine the illegality of a given rate increase imposed by Republic. For these reasons, Plaintiffs and other class members were unaware of the basis of their claims due to the omissions and representations that Republic employed to obscure the facts and calculations of the increases. Plaintiffs did not and could not learn of the facts surrounding the increases—including that they bore no relation to CPI or any other allowable increased costs and that they were excessive—until shortly before this lawsuit was filed through privileged consultation with counsel.

### E. Republic's Coercive, Deceptive, And Unlawful Contact With Putative Class Members.

37. Following the institution of actions—like this one—challenging its Rate Increase practices, Republic has begun a campaign of forcing existing customers into new agreements that purport to prohibit such customers from participating in this litigation or the recovery from this litigation through the inclusion of mandatory arbitration provisions. For example, when a customer complains to Republic regarding a price increase and expresses a desire to cancel because Republic has violated the contract, Republic uniformly tells the customer that they will be liable for up to six months of service charges and demands that the customer that they can sign a new agreement to avoid the charges. Republic does not disclose this litigation, the recovery a customer may be entitled to should this litigation succeed, or the loss of rights through the new agreement when doing so.

38. Upon information and belief, Republic has implemented this campaign in direct response to its liability under this litigation. The type and timing of this communication discourages participation in the litigation. It is coercive and deceptive. Any new agreements that have been signed with the improperly-induced arbitration agreement cannot be an effective bar to participation in this action as they were obtained through uniform false pretenses and deceptive conduct. At least one court has already found that this conduct threatens the orderly progression of litigation and the rights of putative class members.

### V.   CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this action pursuant to Louisiana Code of Civil Procedure art. 591 *et seq.* All requirements of La. C.C.P. art. 591 are satisfied. Plaintiffs propose the following class:

10


Certified True and Correct Copy
CertID: 2023052500166

Kallin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

All entities and people who reside in the Louisiana who entered into a written contract with Republic that provides "Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban Consumers . . . ." and who— within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract as a result of YMP rate increases.

40. The Class includes such customers who entered into contracts which provide "the Consumer Price Index for All Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average..." or substantively similar language.

41. Excluded from the proposed classes are (1) any customer who entered into a contract which contains an arbitration provision or class waiver (at least for the portion of the claims for which such a provision or waiver applies, or until such a provision is rendered without effect) (2) any customer who has signed a release of any claims against Republic, (3) any customer who makes a timely election to be excluded from the Class, (4) any parents, subsidiaries, affiliates, officers, or directors of Republic, (5) and any entity in which Republic has a controlling interest, (6) members of the judiciary who preside over this case or related litigation, (7) entities currently in bankruptcy or whose obligations have been discharged in bankruptcy, and (8) governmental entities.

42. As used in these class definitions, "Republic" means Republic Services, Inc., and BFI Waste Systems, LLC, including all related entities, predecessors, subsidiaries, affiliates, and parent companies.

43. Plaintiffs maintain the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

### A. Existence And Predominance Of Common Questions Of Law And Fact.

44. Republic engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct— imposing and rate increases that were unlawful and excessive—affected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Republic's common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims. Extraneous contractual evidence is prohibited by a form integration clause.

45. This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include,

11


Certified True and Correct Copy
CertID: 2023052500166


Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

but are not limited to, the following:

   a. Whether Republic used standard form contracts with customers;

   b. Whether Republic imposed rate increases on putative class members who entered into the standard contract;

   c. Whether Republic's standard contract only allowed Republic to increase rates to adjust for increases in the specifically identified categories of costs;

   d. Whether Republic's rate increases exceeded any adjustments for increases in the specific costs which could support them under the contract; and

   e. Whether the rate increases Republic enacted resulted in it being unjustly enriched;

   **B. Numerosity.**

   46. The total number of members of each putative class is so numerous that individual joinder is impracticable. Republic has thousands of customers in Louisiana who entered in the form contract and incurred the YMP rate increases.

   **C. Typicality.**

   47. The claims of the named Plaintiffs are typical of the claims of the classes and subclasses. Plaintiffs, like other class members, entered into the form contract, and paid rate increases that were not legally justified. Plaintiffs were subject to, and harmed by, the exact same common policies and practices which affected all class members.

   **D. Adequacy.**

   48. Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs share the same interests and were harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiffs equally with class members. Plaintiffs have retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

   **E. Superiority And Manageability.**

   49. The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is considerable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the classes in a single


Certified True and Correct Copy
CertID: 2023052500166


Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Republic. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

F. **Injunctive Relief**

50. This action is maintainable as a class action under Louisiana Code of Civil Procedure article 591 *et seq.* because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. The challenged practices are ongoing, and Defendants continue to refuse to comply with the law.

VI. **CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

51. All allegations and paragraphs in this complaint, aside from those of other counts, are incorporated by reference.

52. Plaintiffs and each member of the class entered into standardized agreements with Republic which contain identical relevant contractual language.

53. Plaintiffs and each member of the class performed on their agreements, including by paying Republic for services.

54. As set out herein, through its practice of unilaterally increasing rates by more than allowed by contract through the YMP rate increases, Republic breached the agreements.

55. Plaintiffs and each member of the Class have been directly and proximately harmed by Republic's breach of contract in that each paid more than allowed by contract.

56. Each Defendant is liable for breach of these contracts. BFI Waste Services, LLC is listed as the contracting party on the form contracts and is directly liable for the breach of contract. It is the alter ego of Republic Services, Inc. which fully controls all relevant aspects of BFI Waste Services, LLC's conduct, and there is no functional distinction between the two entities. Republic Services, Inc. controls the calculation, amounts, and timing of the rate increases and receives all money paid in the rate increases. It wrote and enforces the form agreement at issue and is also directly liable for the breach of contract.


Certified True and Correct Copy
CertID: 2023052500166

*Kallin Leto*
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

57. All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

58. To the extent necessary, this count is pled in the alternative.

59. Plaintiffs and each member of the entered into standardized agreements with Republic which contain identical relevant contractual language.

60. Plaintiffs and each member of the class performed on their agreements, including by paying Republic for services.

61. Under applicable law, implied in every contract is the covenant of good faith and fair dealing.

62. Defendants, and each of them, failed to perform on the agreements in good faith. They acted arbitrarily and capriciously and failed to fulfill any discretionary duties they might have under the contract to adjust rates reasonably and in good faith. Defendants' uniform course of conduct in raising rates lacks honesty in fact and is inconsistent with the justified expectation that Defendants would increase rates reasonably and only in accordance with the terms of the uniform contract. Defendants' conduct was deliberate and prompted by deliberate bad faith and fraud; intending to reap unearned profit at its customers' expense through a deceptive and hidden unlawful YMP price increases scheme. Through its wrongful conduct, Defendants unfairly prevented Plaintiffs and each member of the class from receiving the full benefits of their agreements.

63. Plaintiffs and each member of the class have been directly and proximately harmed by Republic's breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

## COUNT III
### UNJUST ENRICHMENT

64. All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

65. To the extent necessary, this count is plead in the alternative.

66. Through its rate increase practices, Defendants (including specifically Republic Services, Inc.) received money from the putative class which in equity and justice it should not be permitted to keep. By imposing rate increases which they knew not to be justified by any related

14


Certified True and Correct Copy
CertID: 2023052500166

Kalin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

increased allowable cost, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Defendants (and specifically including Republic Services, Inc.) obtained money which properly belongs to the putative class. The benefit conferred by the putative class was non-gratuitous and Defendants realized value from this benefit. It would be inequitable for Defendants to retain this benefit.

67. Plaintiffs and each member of the Class have been directly and proximately harmed by Republic's conduct in that each paid more for products and services than they rightfully owed.

## PRAYER FOR RELIEF

68. Plaintiffs, on behalf of themselves and each member of the putative Class, demand all remedies and damages available to them, including all unlawful rate increases paid, injunctive relief (including declaratory relief, a prohibition on future unlawful rate increases or surcharges, and a finding that the arbitration provisions and class waivers in recent putative class member contracts are unenforceable), restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

## JURY DEMAND

69. Plaintiffs and the Classes are entitled to, and demand, a trial by jury.

Respectfully submitted,

LAWRENCE J. CENTOLA, III (27402)
ljc@mbfirm.com
MARTZELL, BICKFORD and CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Fax No.: (504) 581-7635

**Please serve via Long Arm:**

Republic Services, Inc.
18500 North Allied Way
Phoenix, AZ 85054

BFI Waste Services, LLC
18500 North Allied Way
Phoenix, AZ 85054


Certified True and Correct Copy
CertID: 2023052500166

Kalin Leto
Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
5/25/2023 12:50 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).